## John F. Dyer *vs.* Otis Rich & others.

In declaring on a promise to pay money, on demand, if a third person shall fail to do a certain act, it is not necessary to aver a special demand before action brought.

A promise that one shall receive a certificate of ten shares of the corporate stock of a certain manufacturing company whose capital shall be one hundred thousand dollars, divided into not more than two hundred shares, is not fulfilled by a tender of a certificate of ten shares of the stock of said company, of which only thirty-five thousand dollars are paid in, divided into seventy shares.

The rule of damages, for breach of such promise, is the value of ten shares in the full capital stock, if it had been made up at the time stipulated, and the company had been then ready, in good faith, to operate upon such capital, pursuant to their charter.

Where a party to a written agreement to pay money, &c. recites therein, as the consideration of his promise, that the promisee had made a conveyance, of even date with said agreement, to a third party, the promisor is estopped to object, for the purpose of showing that such conveyance was inoperative and not a good consideration for his promise, that it was not made until a subsequent day, although such conveyance may in fact bear date of a subsequent day.

It is not necessary to the validity of a patent, that the patentee should take the oath prescribed by law, before the letters patent are granted.

This was an action of assumpsit, commenced January 25th, 1838, upon the following agreement made with the plaintiff by the defendants, bearing date January 22d, 1836 : "Know all men to whom these presents shall come. John F. Dyer, of the city of Providence, in the State of Rhode Island, at our instance and request has, by his *deed bearing even date herewith*, sold and assigned unto the Rockingham Manufacturing Company, a corporation established by law within and by the authority of the State of Vermont, all his right, title, and interest in and to a new improvement in the damask loom, so called, for which letters patent were issued to Patrick McGilroy and Abner S. Tompkins, bearing date the ninth day of May last, as by reference to said deed will appear ; in consideration of three promissory notes, bearing even date herewith, signed by Lemuel Blake of said Boston, merchant, and payable to his order and indorsed by him, one for the sum of six hundred and twenty-five dollars, payable in sixty days, one for the sum of nine hundred and thirty-seven dollars and fifty cents, payable in six months, and the other for nine hundred and thirty-seven dollars and fifty cents, payable in twelve months, and ten shares in the corporate stock

of said Manufacturing Company, and of the guaranty hereinafter contained :

"Now, therefore, in consideration of the premises, we do hereby jointly and severally promise and agree to and with the said Dyer, his executors, administrators, and assigns, that the said Blake shall and will well and truly pay, or cause to be paid, the said three promissory notes, at the times when they shall respectively become due ; and upon his neglect or refusal so to do, we will pay the said Dyer, his executors, administrators, and assigns, to the full amount of the said notes, or such of them as shall not be paid as aforesaid, with interest and all costs and expenses which he or they shall incur or be put to by reason of such non payment.

" And for the same considerations, we do jointly and severally promise and agree to and with the said Dyer, his executors, administrators, and assigns, that he or they shall, *within two years* from the day of the date hereof, receive certificates of ten shares of the corporate stock and estate of the said Rockingham Manufacturing Company, with a sufficient receipt, within or accompanying the same, of the payment of the full par value thereof, to wit, of the sum of $ 500 on each share ; and that, within the said term of two years, a capital stock shall be paid in by the other stockholders of said company, which, in addition to the agreed value of said patent right, estimated at $ 20,000, shall make the whole capital $ 100,000 ; and that the shares into which the said stock shall then be divided, including the said ten shares, shall not exceed two hundred, each of the actual value of $ 500 ; and that if, at the expiration of the said two years, the capital stock actually paid in, including the agreed value of said patent right, shall not be equal to the sum of $ 500 on each share then issued, we will forthwith, *upon demand*, pay to the said Dyer, his executors, administrators, and assigns, such further sum or sums of money as, in addition to those which shall have been paid in as aforesaid, shall amount to the sum of $ 500 on each of said shares."

The declaration, after setting forth said agreement, concluded thus : " And the plaintiff avers that though said two years have elapsed, he has not received a certificate of ten shares of said

corporate stock, with a sufficient receipt of the payment of the par value thereof, to wit, of the sum of five hundred dollars on each share ; nor has a capital stock been paid in, which, with the agreed value of said improvement, as aforesaid, would make the whole capital equal to one hundred thousand dollars. By reason of all which, and of their promise aforesaid, the said defendants have become liable to pay to the plaintiff such sums of money as, in addition to those paid in, would amount to the sum of five hundred dollars on each of said ten shares, to wit, the sum of five thousand dollars. Yet, *though requested,* they neglect so to do."

Three only of the defendants made defence ; the others were defaulted.

From the report of the case, by *Morton,* J., before whom the trial was had, it appeared that the plaintiff proved the execution of the agreement declared on, and rested his case. Whereupon the defendants' counsel requested the judge to instruct the jury that the plaintiff was not entitled to recover, because he had not alleged nor proved any demand on the defendants before action brought ; but the judge refused so to do, and ruled, that the defendants must prove performance of the stipulations in their said agreement, although no demand had been shown ; to which the defendants excepted.

The defendants then introduced the original letters patent, mentioned in said agreement, granted to McGilroy and Tompkins, the patentees ; and it was proved, that said patentees, on the 8th of June, 1835, conveyed all right, which they had acquired, by said letters, to the exclusive use of the improvement therein named, to Carrington & Cozzens, who conveyed the same, on the 11th of September, 1835, to Benjamin Leeds. The defendants also introduced a conveyance by the plaintiff to the Rockingham Manufacturing Company, dated January 28th, 1836, (*six days after the date of the defendants' agreement*) of all his title and interest, being an undivided half, in and to the improvement in the damask loom, for which said letters patent were granted. It was also proved, that one undivided fourth part of said improvement was conveyed to said company, by W. H. & G. L Montague, on the 22d of January, 1836, and one undi-

vided fourth part thereof, by Benjamin Leeds, on the 28th of said January.

The letters patent were granted to McGilroy, who, it was stated therein, had resided two years within the United States, and to Tompkins, a citizen of the United States. It was recited in said letters, that the patentees stated, that said improvement had not been known or used, before their application, and that they had made oath, " that they verily believed that they were the true inventors or discoverers of the said improvement."

It was in evidence, that the plaintiff's interest in the stock of the Rockingham Manufacturing Company, and in the aforesaid agreement of the defendants, was assigned, on the 17th of June, 1836, to W. H. & G. L. Montague, and by them subsequently, prior to the 19th of January, 1838, conveyed to the Chelsea Bank as collateral security for the liabilities of said Montagues to said bank.

It was admitted that C. G. Loring, Esq., on the 19th of January, 1838, was the authorized agent and trustee of said Chelsea Bank, and of said Montagues. It was also admitted, that Otis Rich, as treasurer of the said Rockingham Manufacturing Company, on the 19th of January, 1838, tendered to said Loring, for the benefit of the Chelsea Bank, or whom it might concern, a certificate of twenty shares in said company, and a receipt, copies of which are in the margin ; * ten of said shares

---

\* Rockingham Manufacturing Company, No. 16.

Be it known, That                          of
is the proprietor of twenty shares, numbered one hundred and sixty one to one hundred and eighty, of the real and personal estate of the Rockingham Manufacturing Company, incorporated by the Legislature of Vermont, November 10th, 1835, subject to such conditions as are contained in the act of incorporation, and in the by-laws of the Company, and transferable by deed, under seal, and acknowledged before a justice of the peace, and recorded by the clerk.

L. S.          In witness whereof the seal of the Corporation is hereunto affixed this eighteenth day of January, A. D. 1838.

Henry F. Green, President.

Otis Rich, Treasurer.

Recorded, Lemuel Blake, Clerk.

Boston, January 18th, 1838. This is to certify, that there has been paid in the full par value of five hundred dollars per share, on twenty shares of the

having been intended as and for the ten shares claimed by the plaintiff; which certificate the said Loring, on behalf of said bank, declined to receive, assigning as a reason, that in his opinion, the capital of said Rockingham Manufacturing Company had not been paid in, in compliance with the stipulations of the defendants.

The defendants introduced a copy of the charter of the Rockingham Manufacturing Company, duly certified, by which it appeared, that said company was incorporated by the legislature of Vermont, on the 10th of November, 1835, and that Alexander Fleming was authorized to call the first meeting of said corporation.

Henry F. Green, a witness called by the defendants, produced a record of the doings of said corporation at their first meeting, and stated that he acted as secretary of said meeting, and made the record produced by him, at the time of said meeting. From this record it appeared that the first meeting of said corporation was held on the 10th of February, 1836, in pursuance of a notice signed by the aforesaid Alexander Fleming, which notice was dated 29th January, 1836. It also appeared from the record, that at said first meeting it was voted to accept the aforesaid charter, and that other measures were adopted for the organization of said company.

It was admitted, that certificates of a number of shares, no exceeding seventy, including the twenty tendered as aforesaid, had been issued ; and that, upon a portion of said shares, money had been paid in, to an amount not exceeding $ 25,000, of which in the whole $ 10,000 had been appropriated to the payment of the notes given by L. Blake, one of the defendants, to the plaintiff and others, on account of the purchase of the patent, in pur-

---

capital stock of the Rockingham Manufacturing Company, numbered one hundred and sixty one to one hundred and eighty. Said shares are given in satisfaction of bonds, given to the proprietors of the patent damask loom, on the purchase of the same by the Rockingham Manufacturing Company ; and the treasurer has been duly authorized to certify that all assessments have been paid on the same.

Otis Rich, Treasurer, &c.

suance of a vote of the directors or stockholders of said com-
pany, passed immediately after the execution of the agreement
on which this suit is founded.   This, the defendants contended,
made the amount of capital paid in, estimating the patent at
$ 20,000, according to the stipulations of the agreement, to be
$ 35,000, and made the seventy shares issued, shares of the par
value of $ 500, according to said stipulations.

It was also admitted, that the aforesaid letters patent were de-
livered to the defendants with the deeds of the plaintiff and
Leeds, and the Montagues, and were in the possession of the
Rockingham Manufacturing Company, after the acceptance by
them of their charter, and until and at the time of the trial ;
also that they had used the aforesaid supposed improvement in
the damask loom.

The defendants contended, that as the plaintiff's deed was
not dated and acknowledged, until the 28th of January, 1836,
and the Rockingham Manufacturing Company, the grantee therein
named, was not organized under its charter, until the 10th of
February following, and the agreement of the defendants, pro-
duced by the plaintiff in support of his action, bore date on the
22d of January, 1836, the plaintiff's said deed was no consid-
eration for the defendants' promise, made on the 22d of Jan-
uary ; and that the agreement in suit was wholly without consid-
eration and void.

The defendants also contended, that the aforesaid letters pa-
tent were void, because the alleged patentees had not taken the
oath required by the laws of the United States, as a prerequi-
site to the issuing of valid letters patent ; so that the considera-
tion of the defendants' promises had failed, and the plaintiff was
not entitled to recover.

The defendants also contended, that as the plaintiff had as-
signed his interest in the aforesaid agreement of the defendants,
before the expiration of the two years therein named, and had
not in his declaration negatived performance to his assigns, that
he was not entitled to recover.

The defendants also contended, that the aforesaid contract of

16 *

the defendants appears upon the evidence in the case to be a stock-jobbing transaction, and as such was illegal, and that the plaintiff could not recover thereon.

The defendants also contended, that ·the par value of $ 500 had been paid in, including the agreed value of the improvement in the damask loom, upon each of the seventy shares which had been issued; and that this was a substantial performance of the con‧tract, and that therefore the plaintiff was not entitled to recover. ·

The judge was requested, by the defendants' counsel, to rule all these points in their favor; but he declined so to rule on either of the points, reserving all of them for the opinion of the whole court.

The judge instructed the jury, that the only question for them was the amount of damages; that for the purpose of the present trial, $ 20,000 must be assumed to be the true value, as well as the agreed price, of the patent; of which price $ 10,000 was payable in cash, and $ 10,000 in stock of the company, to which the patent was to be conveyed; that by the defendants' agreement, the capital of this company was to have been $ 100,000; $ 20,000 in the patent, and $ 80,000 in cash paid in; and this capital was to have been divided into 200 shares of $ 500 each, of which shares the plaintiff was to have ten; that a certificate of ten shares with the requisite·formal evidence of the payment of the capital, as stipulated in the agreement, having been duly tendered, this part of the contract was. literally complied with, and consequently the legal· title to the ten shares must be considered as vesting in the plaintiff by the tender. But that another part of defendants' agreement was, that the whole capital should be paid in, in the manner above stated; that this part of the agreement was broken, and the question was, what damages the plaintiff is entitled to, if any, beyond the real value of the ten shares at the time of the tender. It being agreed that there was a capital of $ 15,000 in cash paid in, besides the patent, estimated at $ 20,000, which was conveyed to the company, there was, in effect, $ 35,000 paid in, out of $ 100,000 which was agreed to be paid, leaving a deficiency, when the shares were tendered, of 65 – 100ths of that capital which had

been agreed for; that the true rule of damages would be such as would place the plaintiff in as good a situation as he would have been in, if the defendants had performed their whole agreement; and that the jury should inquire, therefore, what would have been the additional value of the ten shares tendered, if the whole capital had been paid in.  In the absence of other proof, the presumption would be, that any property was worth what was paid for it; that the jury should consider whether there was evidence sufficient to satisfy them that the property of the Rockingham Manufacturing Company was worth more or less than was paid for it :  If not, the capital paid in, being in the proportion of 35 to 100 compared with the capital agreed for, the value of the shares tendered must be taken, in the absence of all other evidence, to be in the same proportion, compared with the value they would have had if the whole capital had been paid in; that is, of the value of $175 only per share, instead of $500, and the plaintiff would be entitled to recover for the deficiency of $325 on each share, with interest from the expiration of the two years named in the agreement.

The jury returned a verdict for the plaintiff, and assessed damages in the sum of $3,453·12.  Which verdict is to be affirmed, and judgment entered thereon, or for such different sum as the court shall direct; unless, upon the case reported, the defendants are entitled to have a verdict entered in their favor, or a new trial.

*Goodrich,* for the defendants, argued, 1st. that the defendants were not liable to an action, until after demand made on them. 1 Chit. Pl. (6th Amer. ed.) 363.  *Sicklemore* v. *Thistleton,* 6 M. & S. 9.

2d. The consideration of the defendants' promise failed The promise was made in consideration of an act done, viz. a deed given by the plaintiff; but the evidence shows that this act was done subsequently, if ever, whereby the defendants' time to perform their promise was shortened, to their injury, and without their consent.  Besides, the plaintiff's deed passed nothing to the corporation, as the corporation, not having accepted its charter, was not legally *in esse.*  Angell & Ames

on Corp. 46.   Again, the letters patent were void, the requisite oath not having been taken by the patentees.   The oath taken was that which is prescribed by *St.* 1793, *c.* 55, § 3, (1 U. S. Laws, Story's ed. 301,) to be taken by a citizen.   The *St.* 1800, *c.* 25, § 1, (1 U. S. Laws, Story's ed. 752,) which extends to aliens, who have resided two years in the United States, the privileges of the patent laws, requires that they shall make oath, that to the best of their belief the invention, &c. "has not been known or used, either in this or any foreign country."   This oath was not taken by the patentees, nor by either of them.   The case of *Whittemore* v. *Cutter*, 1 Gallis. 433, in which it was held that a patent is valid, though the required oath is not previously taken, passed without much consideration, and seems to be virtually overruled by *Pennock* v. *Dialogue*, 2 Pet. 17.   *Grant* v. *Raymond*, 6 Pet. 246. *Shaw* v. *Cooper*, 7 Pet. 319.   See also *Evans* v. *Eaton*, 3 Wash. C. C. 454.   *Earl* v. *Page*, 6 N. Hamp. 477.

The defendants are not estopped, by the recital in their agreement, that they had received a conveyance of the patent, right, to object that it was void.   That conveyance was a quitclaim only, and it is by mistake, and not by fraud, that the patent, attempted to be conveyed, is not a legal one. *Perkins* v. *Bum ford*, 3 N. Hamp. 522.   *Knox* v. *Martin*, 8 N. Hamp. 155.

3d. The plaintiff, on the facts proved, is not entitled to any damages.   He was entitled to a certificate of shares in a certain form, and one which is equivalent has been tendered to him. The shares, that were in fact issued, were worth as much as those which it was originally intended should be issued.   By the agreement, the shares were not to exceed two hundred.   This imports that they might be less.   "Each share" means each of the shares then issued.

The defendants are, in effect, sureties of the manufacturing company.   They undertake to *guaranty* the payment of certain notes ; but a party does not guaranty payment of his own debts.

*C. G. Loring* and *Gardiner*, for the plaintiff. 1st. The plaintiff was not bound to make any demand before suit brought. He was to receive deeds of shares, &c., within a given time ; or in

default thereof, to receive money. The certificate which was tendered cannot avail the defendants, because the capital stock had not been paid in. The defendants knew whether the acts, which they agreed to do, had been done ; and where facts are peculiarly within the knowledge of a party, he is not entitled to notice, and demand. *Hobart* v. *Hilliard,* 11 Pick. 144. *Lent* v. *Padelford,* 10 Mass. 230. The defendants were not sureties, but were the persons to do the acts stipulated.

The provision that the defendants will pay " on demand " has no legal effect. These words are mere surplusage. If they had been omitted, the agreement would have been the same in law that it now. is.

2d. As to the consideration. The defendants are estopped to object, that the corporation was not *in esse* when the plaintiff's deed was given. They have recited, that it was given on the day of their agreement. But a better answer, perhaps, is, that a deed takes effect from the delivery.

The letters patent import, *primâ facie,* that all is right, and the defendants must show the contrary. No statute requires that the letters should show that the oath was taken. Nor does it appear, in the letters, that McGilroy was an alien ; he may have been a naturalized citizen.

The patent laws make no express provision for a joint patent ; and is one to lose the whole right, because the right oath is not administered to the other ? But the oath is not essential to the validity of the patent. The condition of the grant is, that the invention is new. *Whittemore* v. *Cutter,* 1 Gallis. 433. *Cutting* v. *Myers,* 4 Wash. C. C. 220. *Shaw* v. *Cooper,* 7 Pet. 316.

A patent is not void, but voidable only, though some essential prerequisite be omitted. The consideration of the agreement was, therefore, good and sufficient. *Grant* v. *Raymond,* 6 Pet. 246. A defective patent may be surrendered, and a new and amended one taken out. *Ibid. Morris* v. *Huntington,* Paine, 355. *Shaw* v. *Cooper,* 7 Pet. 316.

The defect in the patent in question, if any, is on the face of it, and the plaintiff conveyed without warranty.

3d. The damages should be $ 500 for each of the ten shares The tender, being of a different thing from that which was agreed for, was a nullity, and the plaintiff reverts to the original price of the patent, for which he was to have $ 7,500, and has received $ 2,500 on Blake's notes, leaving $ 5,000 due to him.

SHAW, C. J.    One objection to the recovery of the plaintiff 's, that his deed to the Rockingham Manufacturing Company bears the date of the 28th of January, 1836, and that the company was not organized until the 10th of February, 1836, though incorporated the November preceding, and in fact this agreement is made the 22d of January, 1836, before the date of the deed and the organization of the company.    But we think there are several answers to this objection.    A date of a deed may always be controlled by evidence of the actual delivery.    Here the agreement recites the deed, and recites that it was then made and so made at their request, and this is conclusive, that the deed was then made, and the date is immaterial.    But as to the other part of the objection, that the company was not then organized, we think that was the affair of the defendants, and not of the plaintiff.    He made the deed at their request, and that was a good consideration for the promise.

But we have no doubt that the deed thus made to a company incorporated, would enure to their use when organized, at least by way of estoppel, and be good against the grantor, whether it took effect on its delivery, to pass any property, or not.

The second ground of exception is, that there was no demand made by the plaintiff for the shares, previously to the commencement of the action.    In answer, it appears to the court, that no demand was necessary ; not upon the company, because the plaintiff had no claim upon the company ; nor upon the defendants, because the conveyance was not to be made by them. But a more satisfactory answer, perhaps, is to be found in the stipulation of the defendants, that the plaintiff should receive the ten shares in the capital stock, made up as therein expressed, and no act seems to have been contemplated to be done on his part.    This stipulation was, that the plaintiff should receive ten shares of the capital stock of said company, to be made up to

$ 100,000, of which the patent right should be $ 20,000, and that such stock, so made up, should be divided into shares not exceeding 200 ; so that each share should be of the par value of $ 500.   The stipulation on the part of the defendants was, that if within two years the plaintiff did not receive a transfer of ten such shares, they would pay the difference in cash, on demand. No demand of the shares therefore was requisite ; and as to the demand provided for in the agreement, it was to pay money on demand.   And the *sœpe requisitus* contained in the writ, is all the demand necessary to be averred, and by a well known and familiar rule of law, no other proof of that averment is required.

The defendants further object, that there has been a failure of consideration.   To support this exception, the grounds already suggested are relied upon, viz. that the deed was not made till after the agreement, and that the company was organized still later.   The answer, which seems to the court conclusive, has already been given.   The recital shows that the deed was then given, and the existence and delivery of this deed on request, was a good consideration.

Another exception to support this ground of want of consideration is, that the oath taken by the patentees was not taken in the form prescribed by law, one of the patentees being an alien resident.   It is said that the form of the oath should be, that the patented improvement has not been known or used in this or any other country.   Whether the oath be or be not sufficient in point of form, the court are of opinion that the taking of the oath in due form, is not a condition precedent to the validity of the patent.   It has been so held by the learned judge of the circuit court for the circuit, and we think upon good reason.   1 Gallis. 433.   The statute is directory to the officer who superintends the issue of letters patent, but is not a condition to the validity of the patent.   If in truth the invention is not new, and the use of it not original, it will vacate the patent, whether the oath be taken or not.

Several other answers were made to this exception, but we are of opinion that the one given is decisive, and renders it unnecessary to go into the answer more at large.

The contract being to transfer shares of a stock specially described, namely, 10–200th parts of a stock made up to $ 100,000, including the patent right estimated at $ 20,000, the court are of opinion, that the tender of 10–70ths of a stock of a very different description, was not a compliance with the defendants' contract, and therefore the plaintiff is entitled to recover.

As to the rule of damages; the court are of opinion, that the plaintiff is entitled to recover the value of the ten shares, such as they would have been worth, had the full $ 80,000 cash capital been paid in, in addition to the $ 20,000, which was the estimated value of the patent. The question for the jury is, what would have been the value of ten shares, in such a capital stock, raised for and appropriated to such a branch of manufacture, had it been made up at the time stipulated, and the company ready to proceed in good faith to operate upon such capital pursuant to their charter. It might have been worth somewhat more or less than the par value ; so much as it would have been worth in money, we think the plaintiff entitled to recover.

Unless the parties agree upon the amount of damages, the case will be put to a jury on that single point.